UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CRIMINAL ACTION NO. 4:20CR-00022-JHM**

**UNITED STATES OF AMERICA**                                                **PLAINTIFF**

**VS.**

**BILLY RAY SUTTON**                                                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, Billy Ray Sutton, to suppress all evidence obtained as a result of a search of his residence on September 8, 2020. [DN 19]. The United States filed a response. [DN 30]. No reply was filed. Fully briefed, this matter is ripe for decision

**I. BACKGROUND**

Defendant, Billy Ray Sutton, is charged with one count of possession with intent to distribute methamphetamine on September 8, 2020, and distribution of methamphetamine on March 12, 2020. [DN 1]. On September 8, 2020, a search warrant was executed at Sutton's residence in Henderson, Kentucky, by the United States Marshalls Fugitive Task Force, the Henderson Police Department, and the Kentucky State Police for the search of Sutton who was the subject of outstanding warrants for his arrest. [DN 19-1]. Sutton was located in a clothes dryer within the residence. During the course of the search for Sutton, officers observed several potted marijuana plants in various stages of growth in the house, grow closets, grow lights, ventilation, and aluminum foil. Based on this observation and other information, Detective Travis Goins (the affiant) with the Henderson Police Department submitted an application for a search warrant [Application and Affidavit for Search Warrant "Appl. and Aff.," DN 19–2] for that residence, to

seize any and all controlled substances including marijuana and any other dangerous controlled substances and drug paraphernalia, "including scales, smoking pipes, papers, and other items used in the packaging, sales, and usage of dangerous controlled substances." [*Id.*]. Additionally, the affidavit sought to seize "[b]ooks, records, receipts, notes, ledgers, and other [papers] relating to the transportation, ordering, purchase and distribution of controlled substances, in particular, methamphetamine and other dangerous controlled substances . . . ." [*Id.*].

Based on the application and Detective Goins' affidavit, Henderson District Judge Leslie Newman issued the search warrant authorizing law enforcement to search the residence. On September 8, 2020, law enforcement executed the search warrant locating and seizing a cell phone, plastic bags, digital scales, two operator's licenses for Sutton, operator's licenses for two other individuals, a backpack containing multiple bags of a crystal substance and drug paraphernalia, and marijuana plants. [*Id.*]. Sutton contends that the affidavit supporting the search warrant did not contain sufficient probable cause related to drug trafficking. As a result, Sutton maintains that all evidence seized incident to the search must be suppressed.

## II. LAW

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In determining whether an affidavit establishes probable cause to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In order to establish probable cause to search, a warrant request must state a "nexus between the place to be searched and the evidence sought." *United States v. Bethal*, 245 F. App'x 460, 464 (6th Cir. 2007) (internal

citations omitted). "The belief that the items sought will be found at the location to be searched must be 'supported by less than *prima facie* proof but more than mere suspicion.'" *Id.* (quoting *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003)).

Furthermore, "in seeking to establish probable cause to obtain a search warrant, the affidavit may not employ 'stale' information, and whether information is stale depends on the 'inherent nature of the crime.'" *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). "Whether information is stale in the context of a search warrant turns on several factors, such as 'the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?).'" *Brooks*, 594 F.3d at 493 (quoting *United States v. Hammond*, 351 F.3d 765, 771–72 (6th Cir. 2003)). In the context of drug crimes, "information goes stale very quickly 'because drugs are usually sold and consumed in a prompt fashion.'" *Brooks*, 594 F.3d at 493 (citation omitted) (holding that information regarding six-month-old drug transactions was stale for purposes of establishing probable cause). "However, drug crimes that are long-term operations, like marijuana growing, 'may allow for greater lapses of time between the information relied upon and the request for a search warrant.'" *United States v. Redmond*, 475 F. App'x 603, 608 (6th Cir. 2012) (quoting *United States v. Thomas*, 605 F.3d 300, 310 (6th Cir. 2010)).

### III. DISCUSSION

Sutton contends that the affidavit is wholly lacking probable cause to support the search of the residence for evidence of the crime for which he is accused—possession with intent to distribute methamphetamine—and thus fails to meet the particularity requirement under the Fourth

Amendment. Sutton argues that the only relevant connection of criminal activity to the address was the observation of the marijuana plants. According to Sutton, because the officers had no evidence that drug trafficking was occurring in the home, the search warrant authorizing seizure of evidence of trafficking lacks particularity and violates Sutton's Fourth Amendment rights. Sutton maintains the information in the affidavit regarding the controlled buy in March of 2020 and Sutton's prior records was stale and could not support probable cause for the issuance of the search warrant.

**A. Probable Cause**

The Court reviews a warrant issued by a judge with "great deference" to that judge's determination as to probable cause. *Gates*, 462 U.S. at 236. A judge "may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996) (quoting *United States v. Lawson*, 999 F.2d 985, 987 (6th Cir. 1993) (cleaned up)).

Upon reviewing Detective Goins' Affidavit for Search Warrant in its entirety, this Court finds that probable cause for the search warrant was established considering the totality of the circumstances. Law enforcement lawfully entered the premises for the purpose of serving a facially valid arrest warrant. The affidavit reflects that in the execution of the search warrant for the arrest of Sutton, Detective Matt Conley advised that "he observed multiple grow closets, grow lights, ventilation, and aluminum foil arranged in a way consistent with the cultivation of marijuana." [DN 19-2 at 2]. He also observed an odor of marijuana from inside the residence. Sutton was located inside the residence and arrested for outstanding warrants. [*Id.*]. The affidavit

4

further reflects that six months earlier on March 12, 2020, law enforcement performed a controlled drug buy from Sutton at which time "[a] confidential source purchased 362 grams of methamphetamine for $3250 from Billy Sutton." [*Id.*]. Finally, Detective Goins averred that Sutton "was convicted of Possession of a Controlled Substance 1st Degree 1st Offense on 2/12/2018, TICS 1st Degree 1st Office-Cocaine on 6/25/2007, TICS 1st Degree 1st Offense on 04/04/2001, Possession of a Controlled Substance 1st Degree 1st Offense and Trafficking in Marijuana 1st Offense >8 ounces on 01/05/1999." [*Id.*].

Critically, Detective Conley's observance showed *current* drug activity including cultivation and potential trafficking at the residence in light of the marijuana grow operation and the smell of marijuana. Under Kentucky law, "[t]he planting, cultivating, or harvesting of five (5) or more marijuana plants shall be prima facie evidence that the marijuana plants were planted, cultivated, or harvested for the purpose of sale or transfer." KRS § 218A.1423(4). While the Court recognizes that the consumable nature of narcotics may cause evidence of drug sales or purchases to lose "its freshness extremely quickly," the affidavit in the present case did not suggest that the officers sought evidence of specific drug sales or purchases at the residence. Instead, the affidavit sought to seize all controlled substances, articles of drug paraphernalia, and evidence that the property was being used on an ongoing basis as part of an ongoing grow operation or drug trafficking operation. That evidence at least as it relates to the methamphetamine "was much less likely to disappear than is evidence of drug sales, purchases, or possession." *United States v. Burney*, 778 F.3d 536, 541 (6th Cir. 2015).

Furthermore, to the extent the six-month period between the controlled buy of 362 grams of methamphetamine and the application for the search warrant could be considered stale, the officer's observation of a substantial grow operation in Sutton's residence "put it back into play

5

for purposes of a probable cause determination." *United States v. Daniels*, No. 3:19-CR-177-CRS, 2020 WL 7634591, at *7 (W.D. Ky. Dec. 22, 2020); *see also United States v. Henson*, 848 F.2d 1374, 1381–82 (6th Cir. 1988) (observing that "[w]here recent information corroborates otherwise stale information, probable cause may be found"); *Emery v. Holmes*, 824 F.2d 143, 149 (1st Cir. 1987) (same); *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) ("Evidence of ongoing criminal activity will generally defeat a claim of staleness.").

Additionally, with respect to Sutton's criminal history, "[w]hen an officer identifies 'recent, reliable evidence of drug activity,' *United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018), that activity can provide a reason to believe that drugs or other evidence of crime [will] be found in the suspect's home beyond the suspect's status as a drug dealer alone[.]" *United States v. Reed*, 993 F.3d 441, 448–49 (6th Cir. 2021) (cleaned up). Essentially, the Sixth Circuit recognizes a nexus between drug activity and a defendant's residence "based on the defendant's record of past drug convictions coupled with recent, reliable evidence of drug activity." *McCoy*, 905 F.3d at 417–18.

Finally, as recognized by the Sixth Circuit, "[e]ven if each of these additional items," such as the controlled buy and Sutton's criminal history, "would not suffice to establish probable cause on its own, each factual allegation—whether ultimately deficient or not—is still a relevant data point in the 'totality of the circumstances' constellation, rather than an independent thing to be lined up and shot down one by one." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019).

Under these circumstances, there is a sufficient factual nexus between the evidence of illegal activity and the residence to support the issuing judge's finding that there was "fair probability that contraband or evidence of a crime" would be located in the residence. *Gates*, 462 U.S. at 238. Thus, the Court finds the affidavit sufficient to establish probable cause.

## B. Good Faith Exception

The Court has already determined that probable cause existed to support the affidavit for search warrant in this case. Yet assuming the warrant in question was defective, it appears to the Court that the officers executing the warrant acted in good faith reliance upon the reviewing judge's finding of probable cause to search the residence. *United States v. Leon*, 468 U.S. 897, 923 (1984). The facts presented in the affidavit provided sufficient information to establish the minimal nexus required by the good faith exception. *United States v. West*, 520 F.3d 604, 610 (6th Cir. 2008); *United States v. Ben*, No. 3:14-CR-00053-TBR, 2015 WL 2213367, at *3 (W.D. Ky. May 11, 2015). Accordingly, the Court finds none of the *Leon* exceptions are applicable here.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Billy Ray Sutton, to suppress all evidence obtained as a result of a search of his residence on September 8, 2020 [DN 19] is **DENIED**.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: counsel of record

June 7, 2021